**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **TEXACO EXPLORATION AND PRODUCTION INC. AND MARATHON OIL COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO. 99-3623 c/w 99-3646 and 00-0813** |
| **AMCLYDE ENGINEERED PRODUCTS, ET AL.** | **SECTION "B" (5)** |

**ORDER AND REASONS**

Before the Court is the Defendant Friede Goldman Halter, Inc.'s ("Friede") Motion for Summary Judgment (Rec. Doc. No. 1557). After review of the pleadings and applicable law, and for the reasons that follow,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment is **GRANTED**.

*BACKGROUND*

**I. Facts Leading to Texaco Action**

Texaco Exploration and Production, Inc. and Marathon Oil Company (hereinafter "Texaco") are the lessees of an offshore federal lease at Viosca Knoll Black 786 on the Outer Continental Shelf. This is the site of the oil and gas development project, Petronius. This project was a $400 million deepwater drilling and production project for the development of 80 to 100 million barrels of oil equivalent. During the 1998 construction of the Petronius compliant tower, a main line on a crane , which was mounted on the Derrick Barge 50 (DB-50) failed. The crane or load line failure caused the deck section that was suspended (the "South Deck Module") to fall into the Gulf of Mexico on the Outer

1

Continental Shelf of the Gulf Coast of Alabama and Louisiana.

Prior to the initiation of construction, On March 16, 1996, Texaco entered into the Viosca Knoll Block 786 Contract for Engineering, Fabrication, and Installation, bearing Contract No. NOS-08-96 with J. Ray McDermott, Inc. ("McDermott"), the Contractor, which provided the contractual terms and conditions for engineering, fabrication, and installation of the Petronius Compliant Tower, an offshore drilling and production tower in the Gulf of Mexico offshore the State of Alabama.  This included the tower platform and its components, as well as attendant drilling rigs at Viosca Knoll Block 786.  The DB-50 barge used in the project was owned by J. Ray McDermott International Vessels, Ltd. ("JRMIV").  The crane mounted to the DB-50 was manufactured and designed by the predecessor to United Dominion Industries.  When AmClyde Engineering Products, Inc. was formed in 1989, it inspected the crane on numerous occasions at the request of the crane's owner.  Its inspections failed to reveal design and condition flaws, resulting in an alleged negligent inspection and its attempted repair was also blamed as faulty.  AmClyde later became a subsidiary of Friede Goldman Halter, Inc.

On December 3, 1998, McDermott began installation of both modules onto the already constructed support frame of the Petronius compliant tower.  After the installation of the North Deck, McDermott began installation of the South Deck Module. Between the initial lift of the South Deck Module from the material barge and its placement on the support frame, the

crane's wire rope load line failed, dropping the South Deck Module to the sea floor.

## II. Facts Leading to Underwriters' Subrogation Action

Builder's Risk Underwriters ("the Underwriters") insured the Petronius compliant tower construction project, including the lost South Deck Module.  The Builder's Risk Policy comprises a general conditions section for physical damage coverage and a third party legal and contractual liabilities section.  Texaco was a principal, named assured under the policy.  Under the terms of the policy, Underwriters paid Texaco more than $72 million for covered losses for the loss of the South Deck Module, but not delayed production.

## III. Procedural Posture and Related Facts

On December 2, 1999, Texaco sued among others AmClyde and Friede Goldman Halter, Inc., successors to the designer and manufacturer of the Clyde Whirley 4000 Model 80 crane used.  Federal question jurisdiction stems from the Outer Continental Shelf Lands Act (OCSLA Act).  Texaco did not sue McDermott because their contract contained a binding arbitration clause, but was added to the suit pursuant to Fed. R. C. Pro. 14©.  The defendants in Texaco's suit tendered McDermott as a third-party defendant under the rule and the District Court granted McDermott summary judgment.  The Fifth Circuit panel reversed this summary judgment ruling, and granted Texaco's motion to stay litigation between Texaco and McDermott.  Texaco and McDermott subsequently

submitted to arbitration and resolved their dispute.

On the Underwriters' subrogation claim, the district court granted summary judgment to AmClyde on the ground that it was an additional insured under the Builder's Risk Policy, entitled to waiver of subrogation .  The court granted AmClyde defense costs under the same policy.

This Court held an admiralty bench trial on this action from October 15, 2001 through December 6, 2001.  The Court found that Plaintiffs Texaco Exploration and Certain Underwriters at Lloyd's and London Market Insurance Companies subscribing to Policy Nos. S611625 and S611626 ("Underwriters"), failed to sustain their burden of proof with respect to liability against all defendants, except McDermott.  The Court concluded that JRMIV was liable to Texaco and Underwriters for unseaworthiness of the DB-50 because of the crane load line's failure, and in the alternative, that McDermott's negligence in caring for and inspecting the wire rope, its knowledge of the equalizer system movement and failure to post a lookout to monitor said movement as done in the earlier successful lift and placement of the North Deck Module, *inter alia*, were superseding causes.  JRMIV moved to dismiss Underwriters' subrogation action based on the policy language and the Court vacated its liability findings and entered summary judgment for JRMIV on the ground that JRMIV was An additional insured entitled to a waiver of subrogation or in the alternative that McDermott as the bareboat charter was responsible for the condition, maintenance and operation of the

4

DB-50 at all pertinent times, precluding liability against JRMIV for unseaworthiness.  As previously mentioned, the Court rendered judgment in favor of third party plaintiffs AmClyde and against Third Party Defendants, Certain Underwriters at Lloyd's and London Market Insurance Companies subscribing to Policy Nos S611625 and S611626, for Two Million Five Hundred Thirty-Four Thousand and No/100 Dollars, together with post-judgment judicial interest.

On appeal, the Fifth Circuit asserted that while OSCLA was correctly asserted, the Admiralty jurisdiction was not properly invoked.  Therefore, the case was remanded for a jury trial and the proper application of law of the adjacent state such that the law of the adjacent state may be applied regarding liability on the Texaco claims.  In addition, upon remand this Court should permit the inclusion of Texaco's expert testimony.

On the Underwriter's Appeal, the District Court ruling that AmClyde is an "other assured" under the Builder's Risk Policy entitled to a waiver of subrogation and costs was affirmed.  The Fifth Circuit agreed with the District Court decision not to require allocation, finding that the two entities not insured were predecessors in interest to AmClyde that were represented by AmClyde's counsel, and that the entities appeared in all respects, in the same posture as AmClyde facing the same liability and requiring the same defense as did AmClyde.  The Fifth Circuit also affirmed its ruling that JRMIV is an "other assured" entitled to waiver of subrogation.

One month later, the 5th Circuit granted Underwriter's request for remand of its subrogation claims against United Dominion, and stated that nothing precluded Underwriters from requesting proper allocation of United Dominion's uninsured defense costs in connection with these claims.

A district court jury trial was scheduled on April 7, 2008, but is effectively stayed by the forthcoming interlocutory appeal and writ of mandamus.  Plaintiff Texaco pursues liability claims against AmClyde, Friede, and United Dominion Industries.  Both AmClyde and Friede are debtors in a Chapter 11 bankruptcy action presently pending in the United States Bankruptcy Court in the Southern District of Mississippi.  Texaco claims that Friede is liable for the acts and omissions of AmClyde.  Texaco has waged claims against United Dominion Industries for product liability arising out of a defective design, manufacturing, marketing and sale of the crane, as well as for failure to warn.  Texaco also alleges negligence in relation to the aforementioned claims. Texaco alleges that AmClyde should be held liable for negligent market inspection, maintenance and repair of the crane. Plaintiff alleges that United Dominion's and AmClyde's acts and omissions constitute wanton conduct, and thus seek all damages in the form of delayed production of minerals, uninusured and reinstallation costs, and other uninsured losses, together with pre-judgment interest and costs for applicable state law compensatory and punitive damages.

Builders Risk Underwriters still pursues its subrogation

claims against United Dominion Industries who were declared by the District Court as not constituting an "other insured." The Fifth Circuit acknowledged that Underwriters could seek allocation of uninsured litigation costs relating to UDI. Plaintiffs ask for judgment against United Dominion for actual damages of approximately $90,000,000.00 to be demonstrated at trial; pre-judgment and post-judgment interest; Costs; Attorneys' Fees; and All other relief in law and in equity, both general and special to which Plaintiffs may show themselves entitled.

On March 19, 2008, this Court granted AmClyde's motion for for summary judgment. This Court found that Texaco waived any right it had to recover any consequential losses from AmClyde due to AmClyde's subcontractor status. The Court ordered that Friede file its Motion to Dismiss by Monday, March 24, 2008 and that Plaintiff respond by Thursday, March 27, 2008 (Rec. Doc. No. 1555). Plaintiff filed its response on Monday, March 31, 2008.

Friede contends that as the parent corporation of AmClyde, it is not subject to liability for the acts of its subsidiary unless the parent so controls the operation of the subsidiary as to make it a mere adjunct instrumentality. Friede also argues that because AmClyde has no individual liability, Friede cannot be vicariously liable for AmClyde. Friede highlights that Texaco has provided no support for the allegations of Friede's independent acts and omissions. Friede did not design or manufacture the crane, nor did it inspect the crane or its wire rope. Friede's relationship to this case is limited to its

7

corporate relationship with AmClyde.

Texaco states that this Court only authorized the filing of a Motion to Dismiss, not a Motion for Summary Judgment.  Texaco claims that the Motion for Summary Judgment goes beyond the scope of the motion to dismiss invited by the Court on the basis that Friede's liability was derivative of AmClyde's. Texaco further contends that Friede has not met its affirmative burden with regard to independent liability of Friede.  Finally, Texaco argues that because Friede has provided no evidence to the Court regarding how its plan of reorganization and the related order confirming this plan address both its and AmClyde's liability to Texaco, it has not carried its burden to demonstrate, as a matter of law, that it has no direct liability to Texaco.[1]

### *DISCUSSION*

**A.   Summary Judgment Standard**

Summary judgment is proper if the pleadings, depositions, interrogatory answers and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S. Ct. 2548, 2554-55 (1986).  A genuine issue exists if the evidence would allow a

---

[1]Texaco's allegations regarding Friede's Chapter 11 bankruptcy proceeding has no bearing as to whether liability should be imposed against Friede as the Mississippi bankruptcy court has confirmed its plan of reorganization, and no stay impedes the resolution of Friede's liability in this matter.

reasonable jury to return a verdict for the nonmovant.  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Although the Court must consider the evidence with all reasonable inferences in the light most favorable to the non-moving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial.  *Webb v. Cardiothoracic Surgery Associates of North Texas*, 139 F.3d 532, 536 (5th Cir. 1998).  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue.  *Id.*  Accordingly, conclusory rebuttals of the pleadings are insufficient to avoid summary judgment.  *Travelers Ins. Co. v. Liljeberg Enter., Inc*. 7 F.3d 1203, 1207 (5th Cir. 1993).

**B.  Sufficiency of Motion for Summary Judgment**

On March 19, 2008, this Court granted AmClyde's Motion for Summary Judgment (See Rec. Doc. Nos. 1555 and 1556).  The Court determined that Texaco waived any right it had to recover any consequential losses from AmClyde due to AmClyde's subcontractor status.  Despite Texaco's allegations that the Motion for Summary Judgment goes beyond the scope of the invited Motion to Dismiss per the Court's Order (Rec. Doc. No. 1555), this Court finds that said Motion is compliant with this Court's Order as it addresses liability in light of this Court's grant of summary judgment in favor of AmClyde.

In view of the grant of summary judgment acknowledging

9

AmClyde's subcontractor status, Texaco must allege and present evidence regarding the separate and independent acts of Friede in order for Friede to face liability.[2]  The nonmovant must go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue that would survive summary judgment. *Web*, 139 F.3d at 536. Conclusory rebuttals of the pleadings are simply insufficient to avoid summary judgment.  *Travelers,* 7 F.3d at 1207.  Texaco, the nonmoving party, has failed to satisfy its burden setting forth the existence of specific facts and evidence that would support that there is a genuine issue for trial. Texaco has not alleged and provided evidence setting forth that any independent acts or omissions on the part of Friede impose liability on Friede. *DIRECTV Inc. v. Robson,* 420 F.3d 532, 536 (5th Cir. 2005) *(citing Slaughter v. S Talc. Co.,* 949 F.2d 167, 170 (5th Cir. 1991).

---

[2] The mere fact that a corporation owns all or a majority of the stock of another corporation does not, of itself, impose liability onto the parent company for the acts of its subsidiary. *First Health, Inc. v. Blanton*, 585 So.2d 1331, 1334 (Ala. 1991). The parent corporation must dominate and control the subservient corporations's finances, policy and business practices so that at the time of the transaction or act at issue, the subservient corporation had no separate will or existence of its own.  *Id.*; *see also Larrimore v. Hospital Corp. of America*, 514 So.2d 840 (Ala. 1987).  Texaco has presented no evidence to this effect, and AmClyde enjoys subcontractor status, absolving AmClyde from liability.

## ***CONCLUSION***

For these reasons Defendant's Motion for Summary Judgment is **GRANTED.**

New Orleans, Louisiana, this 2nd day of April, 2008.

*[signature]*

         IVAN L. R. LEMELLE
      UNITED STATES DISTRICT COURT