UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


**TEXACO EXPLORATION and PRODUCTION, INC.,**   CIVIL ACTION

**and MARATHON OIL COMPANY, ET AL.**

**VERSUS**   No. 99-3623

C/W 99-3646

**AmCLYDE ENGINEERED PRODUCTS, INC., ET AL**   SECTION "B" (1)


<u>**ORDER and REASONS**</u>

Before this Court is Defendant AmClyde Engineered Products, Inc. and AmClyde Engineered Products Company, Inc.'s Motion to Enforce Judgment pursuant to Rule 70 of the Federal Rules of Civil Procedure. (Rec. Doc. 1462). Additionally before this Court is Plaintiffs Certain Underwriters at Lloyd's and Market Insurance Companies subscribing to Policy Nos. S11625 and S611626's timely opposition to Defendant's motion in the form of a Motion to Allocate Costs. (Rec. Doc. 1489). For the following reasons Defendant's Motion to Enforce Judgment is **GRANTED** and Plaintiff/Underwriters' Motion to Allocate Costs is **DENIED**.

**Law and Analysis:**

    **A.   Motion To Enforce Judgment v. Motion To Allocate Costs**

Federal Rule of Civil Procedure 70 was created to deal with parties who refuse or seek to disobey judgments by non-compliance with orders to perform specific acts, and it is "not an appropriate basis for relief in cases where, as here, the party seeking relief does not allege noncompliance with any order issued by the court." *United States v. One (1) Douglas A-26B Aircraft*, 662 F.2d 1372, 1374 (11th Cir. 1981). In fact, " if a judgment directs a party to perform any specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person . . . the court may also in proper cases adjudge the party in contempt." *Gates v. Collier*, 616 F.2d 1268, 1272 (5th Cir. 1980).

With regard to the instant action, AmClyde Engineered Products ("Defendant") urges this Court to enforce the final judgment of October 31, 2003, that was affirmed by the Fifth Circuit as to awarding Defendant defense costs under the Builder's Risk Policies. (Rec. Doc. 1462-2 at 1); *Texaco*, 448 F.3d at 781. Certain Underwriters at Lloyd's and Market Insurance Companies subscribing to Policy Nos. S11625 and S611626's ("Plaintiff/Underwriters") main contention with the Motion to Enforce Judgment is that United Dominion Industries ("UDI") is not an other insured under the

Builder's Risk Policy, and therefore not entitled to recover its defense costs. (Rec. Doc. 1489-2 at 2). The theory that Plaintiff/Underwriters assert is that because the same law firms represent Defendant and UDI, some of the cost asserted by defendant are in fact costs associated with UDI, which is not entitled to defense costs. (Rec. Doc. 1489-2 at 4). To remedy this problem, Plaintiff/Underwriters assert a Motion to Allocate Costs with two options: (1) Require AmClyde to make an allocation and appoint an independent auditor or special master to audit the legal invoices submitted; or (2) Allocate the costs on a pro-rata basis. (Rec. Doc. 1489 at 2).

Plaintiff/Underwriters rely on *Duke v. Hoch*, 468 F.2d 973, (5th Cir. 1972), and *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485 (5th Cir. 1992), to assert that they are entitled to an allocation of costs. (Rec. Doc. 1484-2 at 5). *Duke* is an appeal by a judgment creditor "who attempted unsuccessfully to reach by garnishment suit the proceeds of liability insurance policies insuring the judgment debtors." *Id*. at 974. The judgment creditor was seeking this garnishment from a judgment where an insurer had defended its insured, and the judgment creditor had sought covered and non-covered damages. *Id*.

Principally, the issue was whether, or to what extent the counsel provided by the insurer was required to make available to defendants-insured a verdict designating the respective portions of

the total damages representing covered and non-covered damages, "if in a subsequent suit on the policy by the judgment creditor it would be necessary that the creditor prove the amount of covered damages included in the verdict?" *Id*. In the judgment upon which the garnishment was sought, the jury returned a general verdict including covered and non-covered damages. *Id*. After this judgment, the insurer successfully asserted in the garnishment proceedings that the verdict included covered and non-covered damages, which then necessitated allocation of costs. *Id*. at 977. The burden of allocation then moved to the judgment creditor to allocate the general verdict, and the court deemed this burden "impossible." *Id*. The judgment creditor, having failed to meet his burden, could not counter the insurer and the proceeding was decided in the insurer's favor. *Id*. "The consequence to the insureds of a nonallocated verdict [was] the catastrophic total loss of coverage", leaving them personally liable for the entire judgment. *Id*. at 979. Due to the insurer's apparent divergent interest from the insureds, the court decided that the insurer had a duty under the policy to inform the insureds of the "availability of a special verdict and divergence of interest between them and the insurer springing from whether damages were or were not allocated." *Id*. The court stated that the record reflected that the insurer did not fulfill this duty, and thus, the burden on the judgment creditor was lifted and the case on this particular issue was reversed. *Id*.

The *Duke* case is distinguishable from the instant case for in a significant way. *Duke's* discussion of cost allocation is related to an insurer's attempt to escape liability leaving total liability for a judgment with it's insured because a jury returned a general verdict that did not allocate covered and noncovered damages. *Id*. The instant allocation action is about the alleged double payment of defense costs for Defendant and UDI because they are represented by the same counsel. Whereas the allocation of damages in *Duke* were found to be necessary by the district court, in the instant action this Court found that no defense costs allocation was necessary. Texaco, 448 F.3d at 781. In reaching this conclusion, this Court relied on the fact that UDI was "in the same posture…facing the same liability and requiring the same defense" as Defendant. *Texaco*, 448 F.3d at 781. In fact, the Fifth Circuit agreed with this Court on this precise issue that defense costs by Defendant would have been the same even if the non-insured entities were not apart of this case. *Id*. Therefore, the principles of cost allocation in *Duke* are inapplicable to the instant case.

*Enserch* is a complex insurance case that involves a dispute over an insurer's refusal to provide coverage and defense to its insureds when the insureds were defendants in a multidistrict class action suit. *Enserch Corp. v. Shand Morahan & Co.*, 952 F.2d 1485, 1489-1490 (5th Cir. 1992). After deciding to pursue its on defense one of the defendants settled with the plaintiffs of the

multidistrict class action suit, providing that it would further pursue funds from its insurers that would be paid to the plaintiffs. *Id*. at 1491. This defendant successfully sued the insurer and received a verdict providing the plaintiffs of the multidistrict litigation an award under the insurance policy, and an award for defense costs. *Id*. But the judge, however, granted the insurers motion for a Judgment Notwithstanding the Verdict, which reduced the indemnification award in several ways. *Id*. The three reductions that were appealed were: (1) the insurers coverage that was reduced to a maximum of $25 million instead of the $50 million the jury awarded; (2) the denial of the award on in-house legal fees; and (3) the denial of defense costs associated with the trial below, post-trial motions, and this appeal. *Id*. The Fifth Circuit, in reviewing the duty to defend de novo, explained that although the insurer is bound by the settlement agreement its insureds arranged for itself, it is not estopped from contesting coverage. *Id*. at 1493. The court then determined that "the jury was thus allowed to conflate the insurers' duty to indemnify with their duty to defend." *Id*. at 1494. Essentially, the trial court labeled the jury's decision on indemnification in an "all-or-nothing proposition" denying any apportionment of that indemnification between damages covered and those not covered by the policies. *Id*. Therefore, the case was remanded to make findings necessary for apportionment

"between damages for which the insurers owe, and those for which they do not owe." *Id*.

*Enserch* is distinguishable from the instant case for a similar reason as to why *Duke* is distinguishable. In *Enserch*, there was a judicial determination by the Fifth Circuit that the allocation of coverage was necessary because the insurers' duty to indemnify and duty to defend were conflated, which combined covered and non-covered damages in the jury award. *Id*. The instant case lacks such a determination, both the Fifth Circuit and this Court have refused to require an allocation of defense costs due to the fact that Defendant and UDI come to court "in the same posture…facing the same liability and requiring the same defense." *Texaco*, 448 F.3d at 781. The Fifth Circuit also stated unambiguously that "AmClyde's incurred defense costs properly result from the uniform defense of multiple factual entities appearing before the court as one legal entity based upon Texaco and Underwriters' complaints and the nature of the claims." *Id*. Thus, *Enserch* does not control the issues underlying the instant case.

Notwithstanding Plaintiff/ Underwriters' distinguishable doctrinal authorities, Plaintiff/Underwriters' argument is essentially the same issue that has already been resolved by the Fifth Circuit.[1] Plaintiff/Underwriters assert that before the

---
[1] The court is deeply concerned by allegations here of bad faith and noncompliance by Plaintiff/Underwriters with the dictates from this Court and the Circuit, including related allegations contained in motions relative to Plaintiff/Underwriters' expert David Brown. (Rec. Doc. 1481); (Rec. Doc. 1551).

Motion to Enforce Judgment can be granted an independent allocation is necessary. (Rec. Doc. 1489 at 2). The sole ground for this allocation is the fear of Plaintiff/Underwriters that a non-insured entity under the policy would be receiving defense cost as a result it complying with the judgment. (Rec. Doc. 1489-2 at 4). Plaintiff/Underwriters also assert that the Fifth Circuit explicitly left the allocation of costs for the non-insured UDI for remand. (Rec. Doc. 1489-2). Defendant on the other hand contends that the costs for Defendant would have been the same if UDI were not even in the case or if UDI were not in a joint defense agreement with Defendant. (Rec. Doc. 1577-3 at 23).

Before the Fifth Circuit, Plaintiff/Underwriters asserted that costs were erroneously awarded twice including two entities not insured under the policy. *Texaco*, 448 F.3d at 781. This Court granted costs to Defendant without requiring allocation because the two non-insured entities "were predecessors in interest to AmClyde that were represented by AmClyde's counsel and that the entities appeared, in all respects, in the same posture as AmClyde, facing the same liability and requiring precisely the same defense as did AmClyde." *Id*. The Fifth Circuit stated that "with respect to Underwriters' argument that costs were erroneously awarded twice, we similarly affirm the district court's award." *Id*. at 781. In its findings the Fifth Circuit left no ambiguity to this issue further explaining that "AmClyde's incurred defense costs properly result

from the uniform defense of multiple factual entities appearing before the court as one legal entity based upon Texaco and Underwriters' complaints and the nature of the claims." *Id*. "This Circuit has not required an allocation on such a record, and Underwriters fail to point to any controlling law so requiring." *Id*. Thus, when this issue was argued before the Fifth Circuit, it wholly agreed with Defendant's assertion that the costs for Defendant would have been the same if UDI were not even in the case or if UDI were not in a joint defense agreement with Defendant. *Id*.

With regard to Plaintiff/Underwriters argument that the Fifth Circuit stated it is entitled to allocation of costs attributable to the defense of UDI, the court limited that clarification substantially. The court stated that "the foregoing amendment does not affect a substantive change in the judgment of the Court contemplated by the original panel opinion on May 5, 2006. *Texaco Exploration and Production, Inc. v. AmClyde Engineered Products, Inc., et al.*, 453 F.3d 652 (5th Cir. 2006). The amendment merely gave Plaintiff/Underwriters the right to seek allocation of these costs in any prospective litigation. *Id*. Notably, this amendment focuses on allocation for UDI, which means that it cannot be used to have effect on Defendant's costs. Plaintiff/Underwriters have failed to provide a new theory for why cost allocation should take place for Defendant, and as such Defendant's Motion to Enforce

Judgment is **GRANTED** and Plaintiff/Underwriters' Motion to Allocate Costs is **DENIED**.

New Orleans, Louisiana, this 11th day of August, 2009.

                                        Ivan L.R. Lemelle
                              United States District Judge