```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA
```

| | |
|---|---|
| **TEXACO EXPLORATION AND PRODUCTION INC., AND MARATHON OIL COMPANY** | **CIVIL ACTION** |
| **VERSUS** | **NO: 99-3623 C/W 99-3646 AND 00-0813** |
| **AMCLYDE ENGINEERED PRODUCTS COMPANY, INC., ET AL.** | **SECTION: B(5)** |

## ORDER AND REASONS

Before the Court is defendant's, United Dominion Industries, Inc. ("UDI"), Motion For Summary Judgment (Rec. Doc. No. 1635). The Motion is opposed (Rec. Doc. No. 1640). A reply brief has also been filed (Rec. Doc. No. 1643). For the following reasons, the Motion for Summary Judgment is **DENIED.**

## BACKGROUND

The Court is already quite familiar with the facts of this case and the relief sought by Defendants. (Rec. Doc. No. 1551).

## DISCUSSION

### A.  Standard for Summary Judgment

Summary judgment is available if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. of Civ. P. 56. The moving party has an initial burden of

demonstrating the absence of a genuine issue of material fact. *Imperial Trading Co., Inc. v. Travelers Prop. Cas. Co. of Am.*, 638 F.Supp.2d 692, 696 (E.D. La. 2009); *See also*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Summary judgment is improper if a disputed material fact exists, which is defined as a fact that might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).
Once the moving party establishes that insufficient evidence is within the record to support an essential element of the opposing party's claim, the burden shifts to the non-moving party. 638 F. Supp.2d at 693-94. The non-movant must then demonstrate that an issue of fact does exist, by identifying specific facts on the record or by submitting additional evidence. *Id.* at 694. Summary judgment is appropriate if "no reasonable trier of fact could find for the nonmoving party." *Id.* at 693.

The Defendant argues that under the Plaintiff's insurance contract with Texaco (Builder's Risk Policies Nos. S611625 and S6111626), the contract failed to establish a contractual right of subrogation, and thus the plaintiff's only legal rights are established by the principles of Equitable subrogation, whereby the "Made-Whole" doctrine applies (Rec. Doc. 1635). In response to the Plaintiff's memo in opposition, the Defendant argues that even if the settlement agreement does contractually create a right of subrogation (a point which they do not concede), the

settlement agreement does not "*expressly* defeat[] the made-whole doctrine" (Rec. Doc. 1643).

Conversely, the Plaintiff argues that under Alabama law, the Settlement Agreement creates a contractual right of subrogation. Additionally, the Plaintiff argues that the agreement sets forth the parties' intent to modify Underwriters' subrogation rights with sufficient clarity to render the made-whole doctrine inapplicable (Rec. Doc. 1640). Furthermore, the Plaintiff argues that Alabama law does not require specific language or "magic words" to modify the parties' intent regarding the application of the made-whole doctrine to Underwriters' subrogation rights. (Id.)

The made-whole doctrine states that "a subrogee is not entitled to recover, absent full recovery by the insured (ie. unless the damages recovered plus the insurance proceeds exceed the insured's loss . . . " International Underwriters/Brokers, Inc. v. Liao, 548 So.2d 163, 164 (Ala. 1989). The made-whole doctrine is applicable in all cases addressing a party's subrogation rights, contractual or equitable, unless the contract establishing a party's subrogation rights "expressly provides" that the made-whole doctrine will not apply. Wolfe v. Alfa Mut. Ins. Co., 880 So.2d 1163, 1166 (Ala. Civ. App. 2003). This exception has been interpreted to mean that a contract purporting to defeat the made-whole doctrine must contain certain provisions

3

that evince an intent to establish a subrogation right that is "contrary to established equitable principles." Id. at 1167 (quoting Liao, 548 So.2d at 166). However, this exception does not require an explicit reference to the made-whole doctrine. Id. Thus, parties may create and modify their subrogation rights impliedly through the language of their contract or agreement. Id. There is disagreement among courts what langauge is required within a contract to "expressly provide" for the abrogation of the made-whole doctrine. Some courts have held that general subrogation language is sufficient, while other courts have found that the exact same language is insufficient. Id. at 1168-69. Furthermore, the court is bound to apply the "plain and literal meaning of the words employed," and to determine the intent of the parties without disregarding the language used in the written agreement. Id.

In Wolfe, the court held that despite an insurance contract's relatively vague language, the parties' intent to "change the established equitable principles of subrogation" was sufficiently clear from the language of the contract to permit the insurer to recover money from the insured under their rights to subrogation, even thought the insured had not been "made-whole". Id. Therefore, even given contractual language that does not "expressly provide" for the abrogation of the made-whole doctrine, an insurer may still assert subrogation rights without

4

applying the made-whole doctrine.  Id.

Although the Defendant aptly argues that the specific provisions of the Settlement Agreement are insufficient to either establish a contractual subrogation right or to expressly defeat the made-whole doctrine, there exists an issue of material fact whether the provisions of the settlement agreement, when viewed as a whole, are sufficient to establish a contractual subrogation right that seeks to eliminate the made-whole doctrinal requirement. The Settlement Agreement as a whole evinces an intent to satisfy and release the Plaintiff from all liability under the Builder's Risk Policies.  The specific provisions further indicate a desire to modify the remaining contractual rights between Texaco and Underwriters by allowing Texaco and JRM to pursue additional claims against third parties while reserving their rights to subrogation.  (Rec. Doc. 1640-1, pp. 2-4, Para. 1,2,3,8). Therefore, due to the existence of an issue of material fact and out of an abundance of caution, the defendant's motion for summary judgment is **denied** at this time.

New Orleans, Louisiana this 8th day of June, 2010.

_____
UNITED STATES DISTRICT JUDGE

5